Good morning. Good morning. May it please the court, my name is Sherry McCracken and I represent Lisa Aubuchon and Rachel Alexander. I would like to reserve five minutes for rebuttal if possible. All right, I'll try to help you out, but keep your eye on the clock. To say that a merit system employee is at will is an oxymoron. Alexander and Aubuchon were lawyers at Maricopa County Attorney's Office. I'm interested in this idea of the contract and I'm also interested in the idea of unjust enrichment. And so in your second amendment complaint, you say that as part of their employment, plaintiffs were trained and specifically advised that if bar disciplinary proceedings were initiated and any costs associated with the proceedings that alleged ethical violations while plaintiffs were employed by Maricopa County Attorney's Office would be paid by defendants to their successors and then in your opening brief, you say that the trial court, usurping the role of the finder, determined contrary to all law and facts that the penalts had no contract with Maricopa County Attorney's Office. And it seems to me that there had to be a contract and you could call it an employment contract, you could call it a merit system contract or the treatises seem to call it a personal service contract and the Arizona law with respect to this kind of contract seems to say that no matter what you call it, you don't avoid the need for a factual determination of what are the terms of the party's agreement based upon all of the statements, representations and of course the performance. And I take it that you think that you had some evidence that would demonstrate what the terms of this contract were and what would you say that evidence was? Okay. Yes, Your Honor, and you can take over the argument at any time. Maybe I've gone too far. Do you mind pulling the microphones a little bit closer? Oh, okay. I knew I was the one that's voice was not going to carry. So what's the evidence of the contract? Nobody doubts, by the way, there was a contract, even if it was at will, it doesn't matter whether it was at will or not, there was a contract of employment. The question is, your argument is that contract of employment had a term in it that required the payment of bar expenses for people who were disciplined by the bar. And so tell me, tell Judge Eaton and me, because I'm interested in this question too, from whence that term arose. It's certainly not in any formal contract of employment, right? Depending on how you define formal contract. Well, there's no contract of employment. It's not written. There's no written contract. There's no written contract of employment. Okay. So, as I understand it, you say three places it arises from. Okay. It arises from the trust agreement, which says we don't pay these in the absence of express approval by the trustees. I don't think it says that, Your Honor. That's what it says. Trust me. Well, anyway, ER 259. The second place you say it arises from is Mr. Thomas once said to your clients, don't worry, if you ever get involved in a bar proceeding, or words to that effect, the county will pay. Actually, what he said is that I have this corruption task force, whatever, that I want to put together. Can I modify Judge Hurwitz's question, because I'm interested in the timing of this. Okay. I want you to focus on the source of the promise, or the term, for payment of disciplinary costs at the time that they were hired. Is the only potential source at the time that they were hired the merit system rules? No. All right. So, there's no written contract. Okay. At the time they're hired, there's the merit rules, the statutory constitutional ordinance. Right. Right. Employment claim. Any of those sources indicate that there would be compensation or reimbursement for disciplinary costs? The pattern and practice of the office does. The pattern and practice occurred after they were hired, did it not? Right. At least, at least Maricopa County says the only. That's why I want to modify Judge Eaton and Judge Hurwitz's question. She's done a good job modifying my question, so answer hers. To focus really on at the time that they were hired. And then we can talk about, you have plenty of time, so then we can talk about modifications of the terms of the employment. But would you concede that at the time that they were hired, there was nothing that basically promised reimbursement of disciplinary costs? Would you concede that? And then we can go on to talk about whether it shifted at some point? Or do you want to still focus me on something that would tell me, that would tell me that they were promised that at the time that they were hired? It's negative evidence rather than positive evidence, Your Honor. If you will look at the policy concerning bar costs, the first one was in 2002, which actually was before Ms. Alexander was hired and after Ms. Alexander was hired. When you say the policy, what policy are you talking about? It's ER 445. The trust agreement? No, prosecution policies and procedures. Okay. Which says that it applies to trial attorneys. And it says that they aren't going to pay the costs for trial attorneys. My clients aren't trial attorneys. My clients are both administrative. Ms. Abishan is supervising 50 lawyers and all the staff that go with them. So there's a document before they're hired that says they will pay the costs, including the costs that the court... No. I don't read it that way. That's why I'm asking. But they will pay. They won't pay for trial attorneys. My clients don't fall within the category of employees for whom reimbursement would not be granted. Right. So that's one piece of implicit evidence that you're arguing. Anything else? That's what there is at the time they're employed. All right. So now we get to the promise by... Well, maybe I could ask you. Certainly. Please. I don't think the law is that the terms had to have been known at the date of employment. I think that what the terms are can be proven by representations and course of performance. So forgive me. I just want to go back to my first question, which is what evidence do you have, for instance, course of performance that would indicate to you that there was a contract that had this term? Sure. But before you answer that, I want to make sure I've got your answer to Judge Wynn's question correct. At the time... The day they were hired. Right. Let's assume that on the day they were hired, the question was, does a contract exist to pay bar costs for these people? The only evidence you have is the... The policy. The policy that doesn't cover these people. Right. Okay. So now Judge Eaton's asking, what occurred over the course of employment that might suggest that their contract had these terms? Okay. Judge Eaton is right. Wagner v. The City of Globe says that a policy, employment, merit, et cetera, can change over time. So tell us... I agree. So tell us what evidence you've got. Okay. Give me a minute to get to the notes. Well, we've been asking now. You're seven minutes into your argument. We keep asking for the evidence. So tell us what it is. Okay. The promise by County Attorney Thomas. We have the promise by County Attorney Thomas, which I would characterize a little differently than Judge Hurwitz. Thomas put together this corruption area, et cetera. These people knew that it was going to be highly political. It was in the middle of the Arpaio-Thomas mess. They knew that they would be risking probably their jobs, certainly tremendous public scrutiny. And therefore, they relied on Thomas to protect... Let's assume they did rely on it, which I'm not sure the evidence shows. But my question is, was Thomas... Could Thomas promise that the county would pay them? Yes. Did he have the ability to... Contract employment up to that point, you agree, if we throw away this 2002 policy, doesn't include the payment of costs. Can Thomas modify the contract? Yes. What do you cite for that? Well, he is the... Thomas, who himself gets disbarred and is investigated, can promise his co-conspirators don't worry, the county will pay your costs. Well, at that time, they're not co-conspirators, Your Honor. Well, they are. They are. I mean, that's what the evidence in the bar proceeding shows. Yes, but that's not why we're here. We're here on a term of the contract. No, no, I'm saying... I'm asking... In the term of the contract, Thomas can change it. Thomas is... Thomas is the elected... No, just stop for a second. Okay. Tell me what authority you have for Thomas' ability to pay, to bind the county to pay their bar costs. Thomas is the elected official, and he has the authority to make those decisions for his office. So he can... And the proof here... He can sua sponte, say to other people, I am binding the county, don't worry, they will pay your bar costs. Without permission from the Board of Supervisors or anybody else. And Montgomery did the same thing. Is that a contract modification? Yes. And we look to Arizona law to determine what's required for a contract modification. As I understand it, under Arizona law, similar to many jurisdictions, you do need additional consideration for the contract modification. Was there additional consideration in this case for that additional benefit under the terms of the contract? Yes. What was the additional consideration? These two women took on duties that were not within what the duties they did every day. Is there something in the record that says they would not have undertaken these duties in the absence of Mr. Thomas' promise? Yes. What is it? The two affidavits. They said they basically, I wouldn't have done this unless Thomas told me that? Right, unless I was promised protection. And not just financial protection, but protection as a lawyer, protection as an employee. And engaging in unethical behavior B, consideration for contract modification under Arizona law? There was nothing in the record that said that this behavior, taking on this corruption, was unethical. No, no, but they didn't suffer any damage from taking on the corruption, as you call it, investigation. The damage they suffered was from engaging in unethical behavior, which the Arizona Supreme Court has found occurred. And we can't question that. We can't question that finding. So the question is, what is there in the record that shows I undertook this unethical behavior in reliance on Mr. Thomas' promise? They undertook behavior in reliance on Thomas' promise. Thomas was the attorney, was the county attorney. He gave them orders. You must assume for purposes of this that they were appropriately disciplined for being unethical. And their damages arise from the proceedings in which they were disciplined. So the question is, what evidence is there that they undertook the things that got them disciplined in reliance on Mr. Thomas' promise? I understand that they undertook participation in the task force on Thomas' promise, at least that's what they say. What in the record shows that when I made the decisions that got me disciplined, I did it relying on Thomas' promise? It may be nothing. It may not be important. I'm just asking. I was going to say, first of all, I think they had a right to assume that Thomas was not asking them to do anything unethical. But that's the point. The point is that they're not suing today because they agreed to be on this task force. They're suing today because after they agreed to be on this task force, they engaged in unethical conduct. The Arizona Supreme Court found that they did. You can't contest that. Oh, no. I'm not going to contest that. But I'm going to say it's irrelevant to this argument. This argument is a contract argument on whether or not costs should be paid and whether it was a contract. But Judge Wynn is asking you what consideration. The contract was modified. What was their consideration? Their consideration was entering into the task force. I promised I would help you out in terms of saving time and you're down to just a little over two minutes. You can answer the question or you can mull it over and give it to us on rebuttal. Because I've got to say, I agree with you that I think that there's potentially contract modification based on County Thomas's representation. The problem is, as I read Arizona law, you've got to have consideration. I'm not sure that you can use unethical behavior to put forth as the appropriate. The consideration, though, is at the time you accept. Not at the time everything continues to happen. Let me say the contract things. First of all, other county attorneys' fees and costs were paid. One of whom was Peter Spew, who was Alexander's supervisor. His were paid and they were paid after the new policy on the same thing. How does that modify it? It's proof that there was a modification. It's evidence. So let me ask you the question. This is the way this works. I get to ask. Let's assume I have four employees. And I say to one of them, you can go home this afternoon to take care of your child. Have I agreed with the other three that they can go home that afternoon to take care of their child, too? No. And we have here a trust agreement that says the board will decide in its discretion. I understand this may affect your equal protection argument. I'm focusing on your contract argument. So if the board decides in its discretion to pay Spaws costs because he entered in. And they say we did it because he entered into a stipulation and saved us a bunch of costs. But it was against the same policy in the same time frame. Same time frame. And they decide with somebody else who they think is innocent to pay their costs. Does that change the contract for your people? And tell me why. I think it bolsters the fact that there was a contract. That it's circumstantial evidence. It doesn't change the contract. It's just evidence that this contract existed. Yes. Okay. And that the pattern practice of the office was. That's helpful. Thank you. You want to save the rest of your time? Yeah, I'll save the 14 seconds. We've been a hot bench, so we'll put a couple of minutes on the clock for rebuttal. Good morning, Your Honors. My name is Jim Armstrong. I'm here with my partner, Jeff Leonard, who was the trial counsel in this matter. We represent Maricopa County, County Attorney Montgomery, and the other county defendants and appellees. So could you, since we're a hot bench, as Judge Nguyen says, can you address Miss Aubuchon and Miss Alexander before they go off on their misadventures, meet with Mr. Thomas? And Mr. Thomas, who's their supervisor, says, I know this is going to be hotly contested. Actually, what he knows at the time is that I'm about to commit misconduct that's going to get me disbarred. So when you go do this, don't worry about bar costs. He's already thinking about bar costs. You're protected. You're protected. He's their supervisor. Isn't that some evidence that a contract to pay their bar costs existed? It would be perhaps some evidence, but if you look in the record, none of that appears. You asked Miss McCracken several times, what is the evidence of this contract? What is the evidence of this oral modification? The only thing I heard her say were the two affidavits. And I urge Your Honors to read those affidavits. They won't take you very long. Okay, well, I have them here. So why don't I, let's read the deposition testimony. I know I was assured through management on multiple occasions that any attorney that received any kind of discipline would be covered by the Maricopa County's Attorney's Office for any costs, fees, etc. that were incurred if their work was related to their job as county attorney. Is that evidence that there was a contract? It leaves off one very big piece of evidence that is necessary for a contract, and that is consideration. No, she says this from the beginning. This is from day one. My point is that the law in Arizona is that the contract may have been entered into on day one, but the terms can be established by course of conduct and by assurances. So that's one piece of evidence. How about the affidavit? As part of my employment, I was trained to specifically advise that if our disciplinary proceedings were ever initiated, any costs associated with proceedings that alleged ethical violations while I was employed by Maricopa County's Attorney's Office would be paid. So that's the affidavit. What's wrong with that? What's wrong with that is that does not indicate that this was a promise made on day one of her employment. Maybe it was a promise made later. Their argument is, look, before I set off on my misadventures, I was assured that I wouldn't have to worry about bar costs. And that's consideration. I wouldn't have set off on these misadventures had I not done so. I wouldn't have undertaken this assignment, which I was not required to undertake, had I not been promised that I'd be covered. Why isn't that consideration? Because that isn't really their argument. I'm not asking what they're arguing. I may be, as your colleague said to Judge Eaton, I may be doing a better job than she was. I'm asking the question. Why isn't that consideration? I think their position is what Judge Nguyen said during Ms. McCracken's argument. I'm not asking what their position is. I pronounce it Nguyen. I'm not asking what their position is. I'm asking if that's what's in the record, why isn't that consideration? And when you say that, you mean the quote that Judge Eaton said? Judge Eaton read to you from the deposition testimony. She said, one of them said, I think this was Ms. Aubuchon, I was told many times, and Ms. Alexander sort of says the same thing, I was told many times, don't worry, if you ever get in trouble, the county will cover your bar costs. They both say, before I went off on the conduct that got me disciplined, disbarred in one case, suspended in the other, Mr. Thomas reiterated to me that, and I would not have undertaken this assignment but for that assurance. Why isn't that sufficient evidence of the existence of a contract? Because, again, it is not, it was not part of the original terms of the contract. As Judge Logan found, it was a simple... Let's assume it wasn't. Judge Eaton's point is that it may be evidence. But let's assume for purposes of your argument that it wasn't part of the initial contract. Why wasn't the contract modified at that point to include that assurance? Because there was no consideration given for that... You and I keep going back and forth on that. They say there was consideration because when Mr. Thomas promised me that, that motivated me to take on this assignment. Had he not promised me that, it's really a strange argument, which is that I was worried about getting disbarred when I took on the assignment. But when I took on the assignment, that was in my mind. And I wouldn't have taken it on but for this promise. Right, they characterize it, we took on additional duties of a politically insensitive manner. I wasn't required to go out and file false charges against a judge. I wasn't required to file a false RICO claim. But I did it in part because Mr. Thomas promised me that I wouldn't have any bar costs if I did. Well, their conduct may have been deserving of sanctions, but the Arizona Supreme Court's taken care of that already. Our question is, why isn't that consideration? It's not consideration for the reasons Judge Wendt said. You cannot... What was promised, what was promised to be given there, unethical behavior, I will go out and commit unethical misconduct, cannot be consideration. They say I wouldn't even have undertaken the assignment. And if I never undertook the assignment, I never would have engaged in the unethical behavior. Their assignments are what they were directed to do by the Maricopa County Attorney. Their assignments changed over years. They were full-time deputy county attorneys. They were given different assignments. There's no indication in the record that this was any kind of a different assignment. Don't they say, don't they say, I wouldn't have taken on this case, I wouldn't have taken on this assignment in the absence of that promise? No, they do not say that. Tell me what part of the record... When the issue of consideration was raised, they had an opportunity to put in supplemental affidavits, supplemental evidence to support this argument that we took on additional duties. And those additional duties satisfy the consideration element. They put in no evidence of that. They are stuck with their original affidavits, which make no reference to what Your Honor just described. How about Ms. Aubuchon's deposition? Any reference in there to that? No. At least nothing that was put into the record. I mean, she was deposed many times. Right, right. I'm just looking at the excerpts of that part that was put in front of the district judge. Anything in the record in front of the district judge that says, I relied on that promise? No. The only place it occurred was in their motion papers as an assertion of counsel. There was no backing evidence from them, from anyone, from Mr. Thomas. In fact, Mr. Thomas never testified in this case. So let's go back to Judge Eaton's question, because it's a good one, I think. He says, we don't know what the contract was at the time that they signed up, because there's not much evidence of it. But what we do know is that over the course of their employment, when two other ones came up, and I think they were both before Ms. Avishon and Ms. Alexander? I believe so. Opportunities to pay costs? The first two opportunities that came up before that involving county attorneys that we can find, the county paid the costs. And then, add to that Mr. Thomas, maybe he's got no authority to do so, tells us that don't worry, your costs will be paid. Why isn't that some evidence that gets them to a jury? I mean, just to add something, there's also the mere existence of the trust fund, and it's available to pay these charges. That indicates something, doesn't it? Well, the trust fund, I think, is a very simple issue. Just go back to his question. Okay. How can that be evidence of a contract? A contract is a negotiation. It's a bilateral discussion. How can something that's happening to a third party, to Mr. Spa, to Mr. Duffy, how can that be evidence of what our arrangement is, our agreement between you and I? Well, they had the same arrangement. Same arrangement with Mr. Spa and Mr. Duffy. Well, they were not in the same situation. It was a discretionary decision by the county attorney and the county risk management to pay Mr. Duffy's costs and to pay Mr. Spa's costs based upon their radically different circumstances. I'm baffled by this whole notion of discretion. Discretion isn't whim. Discretion is you have an obligated duty and the discretion is I have an obligation to pay. The obligation has to come from some place. You can't take the taxpayer's dollar and just give it to somebody because you want to, because they were a good guy. You have to have an obligation to pay that money. Well, I think Judge Logan's analysis of that issue was correct. The county made a rational, cost-effective decision.  So it's your position that Mr. Duffy's costs there's nothing on the record to demonstrate that there was an agreement between the trustees and Mr. Spa that if he would sign the agreement that they would pay his costs. I couldn't find anything. You mean a written agreement? Any kind of agreement. No, I don't think there was a written agreement. So this decision to pay these costs was made after he signed it. So that can't be the reason. I don't know if that is in the record, Your Honor, about the timing of it. I know that they cooperated. I know that this decision was made to pay $15,000 rather than having to pay hundreds of thousands in defending this. Where's that agreement? That's not an agreement. There's no agreement. I'll do this. I'll sign this agreement to save you any money. No, you're right. There's simply no agreement. That's correct. It was a discretionary decision made by county attorney, county risk management. That they'd agreed with either Mr. Duffy or Mr. Spall beforehand that if they did these things, their costs would be paid. That's correct. You can't pay government money to anybody unless you're obligated to pay. Are you aware of any Arizona law that says that, by the way? I'll cite you the Constitution. Of Arizona? Yes. Kind of familiar. Which is like all other constitutions. Kind of familiar with it. Well, I think the county as any other employer has the discretion to give benefits. It's a cost-benefit analysis. In that way, it's an exercise of discretion is what you're saying. But it's also within the discretion of the county as an employer to pay health insurance for its employees, to pay defense costs in disciplinary proceedings, to pay sanctions in disciplinary proceedings if they chose to do. Let me ask you. You paid a lot of money in defense costs. And that's just discretionary? That's not an obligation? An obligation on behalf of the county to defend. Yeah. Is there an obligation to defend and pay for defense costs? There was a policy, yes. There was a policy in place in the county policies and procedures that they would defend county attorneys on defense costs. That's different from what we're talking about here in disciplinary proceedings. And in fact, in all of these cases... Let me ask you the question. That's not a contractual arrangement? That's not a contractual arrangement? No, it is not. Because if you look under Arizona law, I'll call this an employee handbook because that's what these policies really are. Under Arizona law, if you sufficiently disclaim in this handbook that this is not a contractual commitment, that these policies are changeable at any time, and that's what this handbook said. And in fact, it said... But the handbook doesn't cover costs in any event. No, the handbook said the opposite. It said that in the case you were sanctioned, we will not pay your... Okay, so I want to ask about Ms. Alexander's circumstance because it seems to me Ms. Aubuchon's circumstance is quite distinguishable from the previous cases. She went out and got herself disbarred. Other people got themselves suspended or sanctioned. In Ms. Alexander's case, why doesn't... Why isn't it a reasonable inference that the bar has agreed to pay her costs? It's paid them for Mr. Spahr who has... What kind of sanction? He was sanctioned for negligent... No, what was his... What sanction did he receive? I think it was $15,000. No, no. Bar sanction. Yes, $15,000. He was suspended from the practice of law, was he not? I'm not sure of that. Was Mr. Duffy also suspended? I believe so, yes. So you have two suspensions that occur prior to her and the county pays off on each of them. I understand Ms. Aubuchon's situation is quite different. She gets disbarred. But Ms. Alexander gets a six-month suspension. Why doesn't she have a reasonable expectation that her bar costs are going to be paid? Because they've been paid for the people who are in similar circumstances. I think one of the distinctions the county drew was that both Ms. Aubuchon and Ms. Alexander were found liable for intentional unethical acts. Very clear. If you read the Supreme Court opinion on both. The other two were not? They were not. Well, Mr. Spahr wasn't because he made a deal. It's the same conduct. At least as compared to Ms. Alexander, Mr. Spahr's conduct but he makes a deal with the bar and they call it negligence. Well, I could take a half an hour talking about the circumstances of that. It is in the record, however. It's not in the record that he was only found liable for negligent activities. Respondent participated in and assisted in prosecuting and defending the RICO proceedings and in asserting and controverting issues in it. That is not negligence. May I grab my copy? You can have mine. You're saying because there's no because he basically resolved the case there's no specific findings. Well, I'm looking at SCR 20. There are several paragraphs describing the proceedings against Mr. Spahr and the reference is I think there is a reference to the finding being that it was simply negligence as opposed to willful misconduct. Your argument is well, the other two are very different and as to Ms. Aubuchon I agree with you. As to Ms. Alexander I'm having a hard time figuring out why she isn't comparable to those other two. It may not make any difference but this goes to your argument that your argument was the other two were very different and with Ms. Alexander I have a harder time accepting that. There's also a difference in that neither Mr. Spahr nor Mr. Duffy have made any claim that you are contractually obligated to pay our sanctions in this case. So respond to Judge Eaton's question. He says I'm not sure he's right about Arizona law but I've been wrong about Arizona law a lot of times before. The state could not pay these costs without some contract with the county without some contractual obligation to do so. So the fact that they paid them must show that they have an obligation to do so. What's your response to that? I know of no Arizona law that would preclude that. I think that again this is within the discretionary expenditures that the Maricopa County Attorney's Office can make in managing its office and running its operations. I have one other question if Judge Woon I know we're over time. Yes, we're taking you over time but of course. Mr. Thomas let's assume Mr. Thomas says what they said he said. Can he alter their contract of employment? Certainly he can alter their contract of employment in terms of assignment how much they're paid other things like that. Why can't he alter their contract of employment in terms of whether or not costs are going to be paid? I think he probably could assuming consideration was there. Okay. So you're not saying if and they say he said something you're not saying if he said that that wouldn't alter the contract if consideration was then given? No, I'm not saying that. Okay. All right. Judge Eaton any additional questions? No. Thank you very much. Thank you, Your Honor. Let's put a couple of minutes on the clock. Thank you. First I ask that the court read the trust agreement. The trust agreement says that reasonable costs will be paid and that the board has to approve it. You say that. Tell me where it says 2.1.1.2 and I think I gave you the E.R. I have it over here. And you think it says that reasonable costs will be paid? I thought it said at the discretion of the county. No. It says upon approval by the board Aha. Okay. No. We're saying the same thing. We're saying the same thing. It says But we think it's an administrative decision. Well, doesn't it say Well, let me just make sure we're talking about the same thing because maybe I'm missing something. Doesn't the trust agreement say we won't pay for costs of discipline absent approval of the board? What it says at 2.2.1.1.2 at E.R. Okay. 259 is the reasonable    a disciplinary or licensing proceeding before a professional regulatory body upon written approval from the trustees and the board of trustees and the board of trustees and the board of trustees prior to payment. Right. So what it says is we won't pay those without written approval of the trustee. Right? Yes. But we again we put forth that it's administerial and also remember in this particular case Tell me where it says it's ministerial. If it's ministerial why do they retain the discretion to approve them or not approve them? Because they're an insurance company and they're the county self-insurance but Montgomery said that he made the decision not to pay these costs. Can I ask you to clarify something in the record on a totally different point? What's the difference between this lawsuit and the state lawsuit that I think is pending appeal right now? Is it for the same thing? No. The state lawsuit is on all of the things that Judge Hurwitz has talked about the ethics the defense fees. One of the fights is that Ms. Abishan particularly So the request for the prayer for relief in that case was limited to defense fees only? Yes. Okay. Um and by the way the Court of Appeals in Arizona did say that there was a contract and remanded to the trial court for terms of that contract. Have you have you put that Court of Appeals decision in the record? Um it is mentioned in the statement of facts Yeah I know I know it is mentioned in the statement of facts I'd like to take judicial notice of it if I can find it it's a memorandum it's a memorandum is it not? I brought copies of it It's a memorandum is it not? Yes. Could you just file a supplemental 28J citation with that? Alright anything else to add? We're taking over your time again. Any additional questions? I have one question whether or not Thomas was able to his statements were a novation of the contract or not they were certainly evidence of what the contract was when he represented that these costs would be paid he that was evidence of what the contract was that they were working under at that moment isn't it? I don't think so because I think we characterized the conversation a little differently he comes to these two lawyers and says I want you to do this I want you to do all this corruption it's going to be highly political and I'll protect you we'll make sure that there are no repercussions that's a little different than saying oh by the way bar costs um I don't think anybody at the time although they knew all of this was dangerous I don't think they were thinking about bar costs the other thing is my colleague said that there are no discretionary decisions about fees if that is true then the county attorney as an official of the state of Arizona can both modify the contract and make the discretionary decision the other thing is that there is no evidence in the record that anybody ever asked the trust board to even look at these I don't know if Judge Wynn is going to be happy with me but I'm looking for the Arizona Court of Appeals decision and I take it that's based on the promise that we will cover your fees right yes it's not I don't think the county disagrees today that they promised that the fees would be covered in the handbook well the point the point was is that the court of appeals says there is a contract and remanded for the terms of the contract but the dispute was as you told Judge Wynn about how much fees would be paid right and everybody agrees there was a contract to pay fees I don't think the county agrees that I don't know what they did in the state but Mr. Armstrong said there was policy ok fair enough they could modify it any time I know that we haven't argued this at all but I believe that Judge Logan erred in deciding this one on summary judgment there are certainly disputed facts I believe that is what you're arguing if you're arguing that you went on the merits you've got a much harder case you're just arguing that you get to a jury well yes and quite frankly that's what we all would hope for that's why summary judgment shouldn't be used in these kinds of cases and hopefully we should all be going to trial more thank you thank you very much both sides interesting arguments in this case the matter is submitted for decision by the court
judges: Nguyen, Hurwitz, Eaton